IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 95-cv-02242-WDM-BNB

FERNANDO BUSTILLO,

Plaintiff,

v.

LEE GREEN, et al.,

Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter is before me on **Defendants' Motion for Summary Judgment and Brief in Support Thereof** (the "Motion"), filed November 30, 2004, on behalf of defendants Bunch, Cambiazo, Dunkin, Farrington, Farschon, Gotreaux, Green, Hoekman, Hughston, Kuznicki, Lindsey, Long, Lumbatis, Maroni, McCarty, Montgomery, Mullens, Oakland, Poitras, Racine, Ramey, Rogers, Rymer, Shaffer, Soto, Wacker, Williams, Whiting, and Younglove (the "Bunch Defendants").[1]  For the following reasons, I respectfully RECOMMEND that the Motion be GRANTED and that summary judgment enter in favor of the Bunch Defendants on all of the plaintiff's claims against them.

---

[1]The plaintiff was ordered to respond to the Motion on or before May 6, 2005.  *Order dated February 22. 2005*.  The plaintiff has not filed a response to the Motion, nor has he sought an extension of time beyond the May 6, 2005, deadline to file a response to the Motion.

### I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*. I must liberally construe the pleadings of a *pro se* plaintiff. Haines v. Kerner, 104 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed. R. Civ. P., provides that summary judgment may be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Id. at 324.

Failure to file a response within the time specified results in a waiver of the right to respond to or controvert the facts asserted in the summary judgment motion. Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002). Under these circumstances, the court accepts as true "all

material facts asserted and properly supported in the summary judgment motion. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment." Id.

## II.  BACKGROUND

The Complaint consists of 48 double-spaced typewritten pages and asserts 36 claims for relief against 45 named defendants in their individual and official capacities. The Complaint is brought pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). The Complaint makes the following allegations against the Bunch Defendants:

(1) Bryan Bunch, Lieutenant, "delivered numerous retaliatory and fabricated misconduct reports filed against plaintiff, refused to investigate, and encouraged the unlawful activity to intimidate plaintiff from pursuing his legal activities." *Complaint*, ¶¶ 33, 34, 144.

(2) R. Cambiazo, Correctional Officer, "filed a false and fabricated misconduct report against plaintiff in retaliation for his legal activities, and shutted [sic] off the lighting in his cell for lengthly [sic] periods of time." Id. at ¶¶ 37, 38, 155.

(3) Tony Dunkin, Correctional Officer, "filed a false, fabricated, and retaliatory misconduct report to justify prohibiting plaintiff from using the law library"; denied plaintiff access to the law library and legal supplies; and spread rumors that the plaintiff was a government informant. Id. at ¶¶ 59, 60, 98, 112, 114, 125.

(4) Peter Farrington, Senior Officer Specialist, filed false incident reports; denied plaintiff access to the courts and to the law library and legal supplies; confiscated plaintiff's legal materials; shut off the plaintiff's cell lights; and denied the plaintiff the right to file grievances. Id. at ¶¶ 73, 74, 98, 103, 144, 154, 155.

(5) <u>Todd Farschon</u>, Correctional Officer, filed false incident reports; denied plaintiff access to the law library and legal supplies; and denied the plaintiff the right to file grievances. <u>Id.</u> at ¶¶ 61, 62, 98, 103, 129, 141.

(6) <u>R. Gotreaux</u>, Correctional Officer, filed false incident reports; denied plaintiff access to the law library and legal supplies; subjected the plaintiff to sleep and sensory deprivation; confiscated plaintiff's legal materials; and denied the plaintiff the right to file grievances. <u>Id.</u> at ¶¶ 79, 80, 96, 98, 103, 154.

(7) <u>Lee Green</u>, Discipline Hearing Officer, "knowingly and deliberately utilizes disciplinary punishments against plaintiff in retaliation for his legal activities since being admitted to ADX-Florence," and denied plaintiff due process at grievance hearings; <u>Id.</u> at ¶¶ 11, 12, 114, 121, 128, 131, 134, 146, 153.

(8) <u>Ray Hoeckman</u>, Lieutenant, "delivered numerous retaliatory misconduct reports, refused to investigate, encouraged and supported his subordinate guards to harass and intimidate plaintiff, and shutted [sic] off the lights in his cell on numerous occasions"; spread rumors that the plaintiff was a government informant; and improperly sanctioned the plaintiff. <u>Id.</u> at ¶¶ 23, 24, 125, 147, 160.

(9) <u>Edwin Hughston</u>, Lieutenant, improperly denied the plaintiff regular meals as a disciplinary sanction; spread rumors that the plaintiff was a government informant; and held unauthorized disciplinary hearings "absent proper notice, right to be present during its proceedings, right to call witnesses, marshal the facts and submit written documentary evidence in plaintiff's behalf or otherwise present an adequate defense assisted by staff representative and found him guilty in abentia [sic]." <u>Id.</u> at ¶¶ 27, 28, 117, 125, 160.

(10) George Kuznicki, Senior Officer Specialist, denied plaintiff access to the law library and legal supplies. Id. at ¶¶ 65, 66, 98.

(11) Joseph Lindsey, Correctional Officer, "filed several false and fabricated misconduct reports against plaintiff in retaliation for petitioning the Courts for redress of grievances"; denied plaintiff access to the law library and legal supplies; denied the plaintiff the right to file grievances; "deliberately maliciously infected him with the hepatitis virus to incapacitate him and prevent" him from filing briefs in other civil cases; denied him a sack lunch on June 29, 1995; harassed the plaintiff using two-way speakers; and denied the plaintiff a properly functioning toilet. Id. at ¶¶ 49, 50, 98, 99, 103, 108, 118, 123, 124, 136.

(12) Henry Long, Correctional Officer, filed false incident reports against the plaintiff; denied plaintiff access to the law library and legal supplies; denied the plaintiff the right to file grievances; confiscated the plaintiff's legal materials in order to prevent him from timely filing a brief in a separate civil action; and turned off the lights in his cell on numerous occasions to prevent him from meeting filing deadlines "imposed by several courts." Id. at ¶¶ 77, 78, 98, 103, 154, 155.

(13) William Lumbatis, Senior Officer Specialist, denied plaintiff access to the law library and legal supplies; "filed numerous false and perjurious memorandums supporting the retaliatory infractions filed against plaintiff"; denied the plaintiff the right to file grievances; and turned off the lights in his cell on numerous occasions to prevent him from meeting filing deadlines "imposed by several courts." Id. at ¶¶ 35, 36, 98, 103, 155.

(14) Michael Maroni, Senior Officer Specialist, denied plaintiff access to the law library and legal supplies; denied plaintiff the right to file grievances; and confiscated legal papers to

prevent him from meeting deadlines in other civil cases.  Id. at ¶¶ 71, 72, 98, 103, 154.

(15) James McCarty, Senior Officer Specialist, "aided and abetted retaliatory disciplinary charges against plaintiff to prohibit him from using the law library" and denied plaintiff access to the law library and legal supplies.  Id. at ¶¶ 41, 42, 98, 114.

(16) Rodney Montgomery, Correctional Officer, denied plaintiff access to the law library and legal supplies; filed false incident reports against the plaintiff; turned off lights in the plaintiff's cell to prevent him from meeting deadlines in other civil actions; and denied the plaintiff food in retaliation for "plaintiff's jailhouse lawyering and petitioning the Courts for redress of grievances."  Id. at ¶¶ 75, 76, 147, 148, 149, 155, 159.

(17) Jay Mullens, Senior Officer Specialist, "filed numerous false, fabricated, and retaliatory infractions against plaintiff to intimidate him from pursuing his legal activities and confiscated his legal documents"; denied plaintiff access to the law library and legal supplies; confiscated legal materials; denied him a bag lunch on June 29, 1995, in retaliation for his legal activities; and spread rumors that the plaintiff was a government informant.  Id. at ¶¶ 53, 54, 98, 105, 116, 118, 125.

(18) Jeffrey Oakland, Senior Officer Specialist, denied plaintiff the right to file grievances and "filed several false, fabricated, and retaliatory misconduct reports against plaintiff for petitioning the courts for redress of grievances."  Id. at ¶¶ 63, 64, 103.

(19) Robert Poitras, Correctional Officer, "filed a false, fabricated, and retaliatory infraction against plaintiff in retaliation for petitioning the Court for redress of grievances"; denied plaintiff access to the law library and legal supplies; and denied plaintiff the right to file grievances.  Id. at ¶¶ 57, 58, 98, 103.

(20) Paul Racine, Correctional Officer, denied plaintiff access to the law library and legal supplies. Id. at ¶¶ 69, 70, 98.

(21) David Ramey, Lieutenant, spread rumors that the plaintiff was a government informant. Id. at ¶¶ 89, 90, 125.

(22) Charles Rogers, Senior Officer Specialist, denied plaintiff access to the law library and legal supplies and "fabricated memorandums supporting retaliatory disciplinary punishments forced upon plaintiff. Id. at ¶¶ 51, 52, 98, 141.

(23) John Rymer, Case Manager, aided and abetted attempts to murder the plaintiff; failed to pick up plaintiff's legal mail causing him to miss several deadlines imposed by the federal courts; "deliberately and maliciously infected him with the hepatitis virus to incapacitate him and prevent" him from filing briefs in unrelated civil cases; denied plaintiff access to the grievance procedure; filed a false incident reports against the plaintiff on June 20, 1995; permitted guards to "inflict an incision using a surgical blade or other cutting instrument on the tip of his right thumb intended to impede writing, typing, and the use of an ink pen"; spread rumors that the plaintiff was a government informant; opened plaintiff's legal mail; confiscated and destroyed legal materials to prevent the plaintiff from litigating unrelated civil cases; placed glass in the plaintiff's food "to inflict serious injuries upon him and hoping to intimidate plaintiff from pursuing his legal activities"; and denied the plaintiff his due process rights in a grievance procedure. Id. at ¶¶ 15, 16, 101, 102, 108, 111, 112, 122, 125, 135, 139, 143, 145, 150, 152, 167.

(24) P. Shaffer, Senior Officer Specialist, denied plaintiff access to the law library and legal supplies. Id. at ¶¶ 55, 56, 98.

(25) Rene Soto, Senior Officer Specialist, confiscated the plaintiff's legal and personal property "in retaliation for the plaintiff's 'jailhouse lawyering' and petitioning the Courts for redress of grievances." Id. at ¶¶ 87, 88, 97.

(26) Mark Wacker, Senior Officer Specialist, "spread and circulated vicious rumors that plaintiff was his government informant to undermine his litigation" and denied plaintiff access to the law library and legal supplies. Id. at ¶¶ 81, 82, 98, 125.

(27) N. Whiting, Senior Officer Specialist, denied plaintiff access to the law library and legal supplies. Id. at ¶¶ 67, 68, 98.

(28) Darrell Williams, Lieutenant, "delivered numerous retaliatory misconduct reports, refused to investigate the underlying facts, and supported the unlawful conduct of his subordinates." Id. at ¶¶ 21, 22, 119, 129, 132.

(29) Robert Younglove, Lieutenant, spread rumors that the plaintiff was a government informant; "delivered numerous false and retaliatory misconduct [] reports"; and "refused to investigate the facts giving rise to the retaliatory infractions." Id. at ¶¶ 29, 30, 125, 151.

All claims against the defendants in their official capacities have been dismissed with prejudice. *Order entered May 6, 1998* (filed May 7, 1998). The Complaint is construed to allege the following five claims for relief against the defendants, individually or as co-conspirators:

(1) retaliation against the plaintiff for exercising his First Amendment rights to seek judicial redress for his grievances; (2) imposition of cruel and unusual punishment in violation of the Eighth Amendment; (3) taking the plaintiff's property without due process or compensation in violation of the Fifth Amendment; (4) denial of the plaintiff's Fifth Amendment due process

rights in the grievance procedures; and (5) denial of the plaintiff's equal protection rights by denying him equal access to the law library. Id. at p. 12.

The plaintiff moved for a preliminary injunction on December 9, 1996. On November 24, 1998, a hearing was held on the injunction motion. The motion was denied. *Order issued March 16, 1999* (filed March 17, 1999). On March 6, 2000, summary judgment was granted in favor of nine of the defendants. *Order issued March 6, 2000* (filed March 7, 2000). The remaining 36 defendants were ultimately dismissed without prejudice based on failure to effect service of process upon them. *Order issued May 17, 2000* (filed May 18, 2000); *Order issued March 7, 2000* (filed March 8, 2001).

The plaintiff appealed to the Tenth Circuit Court of Appeals. The appellate court affirmed the grant of summary judgment in favor of all defendants in their official capacities; affirmed the grant of summary judgment in favor of the nine defendants; affirmed dismissal of the complaint without prejudice as to two of the defendants for lack of personal service; affirmed dismissal of one of the defendants with prejudice due to the death of that defendant; affirmed the order denying the plaintiff's motion for a preliminary injunction; and remanded the case for service on the remaining 33 defendants. *Order and Judgment entered August 19, 2002*. Most of those defendants have now been served.

### III.   UNDISPUTED FACTS

The plaintiff is incarcerated by the Bureau of Prisons ("BOP") at the United States Penitentiary, Administrative Maximum ("ADX") in Florence, Colorado. *Complaint*, p. 2. He is serving a life sentence for murder. *Motion*, Exhibit A-1, p. 13, ll. 5-20.

The plaintiff filed his initial Civil Rights Complaint on August 30, 1995. He filed his

9

Amended Complaint for Equitable Relief and Money Damages (the "Complaint") on February 8, 1996. At all times relevant to the allegations of the Complaint, the plaintiff was confined in the ADX Control Unit, which is a separate, highly secure housing unit contained within the ADX. *Complaint*, ¶ 92. At all times relevant to this case, he was housed in a cell by himself. *Motion*, Exhibit A-1, p. 28, ll. 23-24. Because of the high level of security in the ADX Control Unit, the plaintiff did not have any contact or opportunity for contact with other inmates at all times relevant to this case. Id. at Exhibit A-11, ¶ 9. The plaintiff's physical contact with staff was limited to the occasions when he was moved from his cell to the law library, the recreation area, or the medical unit. Id. at Exhibit A-10, ¶ 6. The plaintiff was a problem inmate and had a history of harassing staff. Id. at Exhibit A-3, ¶ 1; Exhibit A-5, ¶ 4; Exhibit A-8, ¶ 5; Exhibit A-23, ¶ 4; Exhibit A-33, p. 67, ll. 3-20.

The plaintiff's cell has a window to allow in outside light. Id. at Exhibit A-11, ¶ 12. If the plaintiff's cell lights were turned off during the day, he would still have sufficient light in the cell to read, write, and do other activities. Id.

The plaintiff was infected with hepatitis A, B, and C prior to his admission to ADX. Id., at Exhibit A-1, p. 21, ll. 20-21; Exhibit A-32, pp. 53, l. 6 - p. 54, l. 4. Because the plaintiff had already contracted hepatitis before arriving at ADX, he could not have contracted the disease at ADX. Id. at Exhibit A-32, pp. 53, l. 6 - p. 54, l. 4. Once an individual contracts hepatitis, he will always carry that diagnosis; the disease does not disappear. Id. at p. 62, l. 1-6.

Defendants Bunch, Dunkin, Farrington, Farschon, Gotreaux, Green, Hoekman, Hughston, Kuznicki, Lindsey, Long, Lumbatis, Maroni, Montgomery, Mullens, Oakland, Poitras, Racine, Ramey, Rymer, Wacker, and Williams were not aware during the time relevant

to this lawsuit that the plaintiff had litigation pending against the Bureau of Prisons or its staff. Id. at Exhibit A-3, ¶ 10; Exhibit A-5, ¶ 4; Exhibit A-6, ¶ 4; Exhibit A-7, ¶ 4; Exhibit A-8, ¶ 9; Exhibit A-9, ¶ 4; Exhibit A-10, ¶ 4; Exhibit A-11, ¶ 5; Exhibit A-12, ¶ 4; Exhibit A-13, ¶ 4; Exhibit A-14, ¶ 4;  Exhibit A-15, ¶ 4; Exhibit A-16, ¶ 4; Exhibit A-18, ¶ 9; Exhibit A-19, ¶ 7; Exhibit A-20, ¶ 4; Exhibit A-21, ¶ 4; Exhibit A-22, ¶ 4; Exhibit A-23, ¶ 5; Exhibit A-25, ¶ 4; Exhibit A-27, ¶ 4; and Exhibit A-29, ¶ 8.

The plaintiff's law library privileges were suspended for one year based on his misconduct on June 20, 1995, while using the library. Id. at Exhibit A-34. The defendants did not improperly deny the plaintiff access to the law library or the legal materials to which he was entitled. Id. at Exhibits A-3 through A-30; Exhibit A-33, p. 71. The defendants did not improperly confiscate the plaintiff's legal materials. Id. at Exhibits A-3 through A-30; Exhibit A-36; Exhibit A-38. The defendants did not fail to pick up the plaintiff's legal mail, grievances, or materials. Id. at Exhibits A-3 through A-30.

The defendants did not deny food to the plaintiff at ADX. Id. Inmates at ADX are given three meals per day. Id. at Exhibit A-11, ¶ 8. The defendants did not cause the plaintiff to contract hepatitis, cut his thumb, or cause his food to be spoiled. Id. at Exhibits A-3 through A-30. The plaintiff's claimed injuries to his fingers were self-inflicted. Id. at Exhibit A-32, p. 52, ll. 18-24. The defendants did not deny the plaintiff property without due process of law. Id. at Exhibits A-3 through A-30. The defendants did not deny the plaintiff due process in grievance proceedings. Id. Nor did they deny him equal protection of the law in regard to his use of the law library. Id.

## IV.  ANALYSIS

### A.  Collateral Estoppel and Law of the Case

The defendants assert that the plaintiff's claims against the remaining defendants are barred by the doctrine of collateral estoppel.  Collateral estoppel, also known as issue preclusion, bars the relitigation of an issue finally decided in a prior action.  Sunny Acres Villa, Inc. v. Cooper, 25 P.3d 44, 47 (Colo. 2001).  The defendants do not rely on a "prior action" to invoke collateral estoppel.  The rely only on previous decisions in this case.  Therefore, the doctrine of collateral estoppel does not apply.

The defendants further assert that the law of the case doctrine bars the plaintiff from relitigating any of the legal issues previously decided in this case.  "The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  McIlravy v. Kerr-McGee Coal Corp., 204 F.3d 1031, 1034-35 (10th Cir. 2000) (internal quotations omitted).

> When a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal.  The law of the case doctrine is intended to prevent continued re-argument of issues already decided.

Huffman v. Saul Holdings Ltd. Partnership, 262 F.3d 1128, 1132 (10th Cir. 2001) (internal quotations and citations omitted).[2]  Thus, to the extent the district judge or the Tenth Circuit has decided upon a rule of law in this case, that rule will govern my decision here.

---

[2] There are only three narrow exceptions to the law of the case doctrine, none of which are applicable here.  McIlravy, 204 F.3d at 1035.

12

### B.   Retaliation Against the Plaintiff for Exercising His First Amendment Rights to Seek Judicial Redress for His Grievances

The Complaint is replete with allegations that the defendants retaliated against the plaintiff for filing civil actions in federal court against the BOP or its staff.  The alleged retaliatory acts include harassment and intimidation of the plaintiff, filing false incident reports against the plaintiff, refusing to investigate the facts underlying the false incident reports, subjecting the plaintiff to sleep and sensory deprivation, confiscating and destroying his legal papers, denying access to the law library and legal resources, failing to pick up the plaintiff's legal mail and grievances, deliberately infecting him with hepatitis, deliberately cutting his thumb with a surgical blade, denying meals, and placing broken glass in his food.

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his rights to access the courts."  Smith v. Mashner, 899 F.2d 940, 947 (10th Cir. 1990).  "This principle applies even if the action taken in retaliation would be otherwise permissible."  Id. at 948.  An inmate, however, is not "inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity."  Peterson v. Shanks, 149 F.3d 1140,1144 (10th Cir. 1998).  Therefore, to prevail on a claim of retaliation a plaintiff "must prove that but for the retaliatory motive, the incidents to which he refers . . . would not have taken place."  Id. (quotations and citation omitted).  "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights."  Id. (quotations and citation omitted) (emphasis in original).

13

All defendants accused of retaliation have submitted affidavits wherein they specifically state that they did not take any action against the plaintiff because he was engaged in litigation. *Motion*, Exhibits A-3 through A-30, A-38.  Moreover, nearly all of these defendants state that they were not even aware that the plaintiff had litigation pending in federal court against the BOP or its staff.  Id.  The plaintiff does not provide any evidence to create a material fact dispute that these defendants retaliated against him for exercising his constitutional right to access the courts.

"After defendants moved for summary judgment, attaching their declarations denying the allegations in [plaintiff's] verified complaint, the burden shifted to [plaintiff] to produce evidence tending to prove every element of each and every one of his claims--sufficient evidence to require submission of every claim to the jury."  Bustillo v. Hawk, No. 04-1069, 2005 WL 2114157, slip op. at 3 (10th Cir. Sept. 2, 2005) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-250 (1986).  The plaintiff has failed to meet this burden.  I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks summary judgment in favor of the defendants on the plaintiff's retaliation claims.

### C.  Imposition of Cruel and Unusual Punishment in Violation of the Eighth Amendment

The Complaint alleges that the defendants violated the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.  The alleged cruel and unusual acts overlap with the alleged retaliatory acts.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII. The Eighth Amendment prohibition of cruel and unusual punishment requires prison officials to

provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted). A prisoner claiming an Eighth Amendment violation must establish both objectively and subjectively that particular conditions of confinement constitute cruel and unusual punishment. Wilson v. Seiter, 501 U.S. 294, 297-298 (1991). To satisfy the objective component, a plaintiff must allege a deprivation which objectively is "sufficiently serious" to form an Eighth Amendment violation. Id. at 298. To satisfy the subjective component, plaintiffs must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. Farmer, 511 U.S. at 834.

Each defendant specifically states that he or she did not subject the plaintiff to any harm and that all actions toward the plaintiff were done in good faith and in compliance with all applicable BOP policies and regulations. *Motion*, Exhibits A-3 through A-30, A-38. The plaintiff does not provide any evidence to create a material fact dispute that the defendants were deliberately indifferent to a substantial risk of serious harm. Accordingly, I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks summary judgment in favor of the defendants on the plaintiff's Eighth Amendment claims.

### D. Taking the Plaintiff's Property Without Due Process or Compensation in Violation of the Fifth Amendment

The Complaint contains allegations that defendants Farrington, Gotreaux, Long, Maroni, Mullens, Soto, and Rymer improperly confiscated the plaintiff's legal and personal property. *Complaint*, ¶¶ 97, 105, 150, 154. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S.

15

319, 332 (1976).

Here, all of the defendants accused of confiscating plaintiff's property have stated under oath that they did not improperly confiscate the plaintiff's property. *Motion*, Exhibits A-6, ¶ 10; A-8, ¶ 12; A-14, ¶ 8; A-16, ¶ 8; A-19, ¶ 7; A-25, ¶ 17.  The plaintiff does not provide any evidence to create a material fact dispute that his property was confiscated in violation of due process.  I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks summary judgment in favor of the defendants on the plaintiff's claims for taking of property in violation of due process.

### E.  Denial of the Plaintiff's Fifth Amendment Due Process Rights in the Grievance Procedures

The Complaint alleges that the defendants denied the plaintiff his due process rights when they filed false incident reports against him, failed to investigate the charges against him, failed to give him notice of disciplinary hearings, and failed to provide him with an opportunity to present witnesses and evidence at the disciplinary hearings.

The filing of false or unfounded charges against an inmate does not violate the Due Process Clause.  Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986).  Due process requires only that the inmate be granted a hearing on whatever charges were made against him.  Id.

To meet the standards of due process with regard to a disciplinary hearing, a prisoner is entitled to:

> (1) "written notice of the charges" against him at least twenty-four hours before the hearing; (2) the opportunity "to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and (3) a "written statement of the factfinders as to the evidence relied on and the reason for the disciplinary action" taken.

Smith v. Maschner, 899 F.2d 940, 946 (10th Cir. 1990) (quoting Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974)).

All defendants accused of denying the plaintiff his due process rights with regard to grievance procedures have submitted sworn statements that the plaintiff was provided written notice of the charges against him at least twenty-four hours before the hearing, that he was provided the opportunity to call witnesses and present evidence, and that he was provided a written statement of the evidence relied upon and the reason for the disciplinary action taken. E.g., *Motion*, Exhibits A-9, ¶¶ 6-10; A-11, ¶ 10; A-25, ¶ 6. The plaintiff has not provided any evidence to create a material fact dispute regarding whether his due process rights were violated in the context of his grievance procedures. I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks summary judgment in favor of the defendants on the plaintiff's claims for due process violations related to grievance procedures.

### F.  Denial of Equal Protection Rights

The Complaint alleges the plaintiff's equal protection rights were violated because the defendants denied him equal access to the law library. The Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV, § 1. The equal protection guarantee applies to the federal government through the Due Process Clause of the Fifth Amendment. Adarand Constructors, Inc. v. Slater, 228 F.3d 1147, 1152 (10th Cir. 2000). Equal protection mandates that the government shall treat similarly situated persons alike. Id. In order to state a claim for violation of equal protection rights, a plaintiff must make a threshold showing that he was treated differently from others who were similarly situated. Barney v.

17

Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1998).

The Complaint does not allege any facts that would invoke the equal protection clause. Moreover, the record demonstrates that the plaintiff spent considerable time in the law library; far more time than most other Control Unit inmates. *Motion*, Exhibit A-4, ¶ 4. The plaintiff has not set forth any evidence to create a material fact dispute regarding whether he was denied equal access to the law library. I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks summary judgment in favor of the defendants on the plaintiff's equal protection claims.

## V.  CONCLUSION

I respectfully RECOMMEND that the Motion be GRANTED and that summary judgment enter in favor of defendants Bunch, Cambiazo, Dunkin, Farrington, Farschon, Gotreaux, Green, Hoekman, Hughston, Kuznicki, Lindsey, Long, Lumbatis, Maroni, McCarty, Montgomery, Mullens, Oakland, Poitras, Racine, Ramey, Rogers, Rymer, Shaffer, Soto, Wacker, Williams, Whiting, and Younglove on all of the plaintiff's claims against them.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real

Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated September 9, 2005.

BY THE COURT:

/s/ Boyd N. Boland
United States Magistrate Judge